INHABITANTS OF MONROE *versus* INHABITANTS OF FRANK-
FORT.

The settlement of a pauper, who, at the time of the annexation, was residing on the territory set off from the defendant town and annexed to the plaintiff town, and then and there supported by the former, was not changed by § 3, c. 226, of the Special Laws of 1863.*

---

* Statute of 1863, c. 226, § 3. "All paupers now chargeable to the town of Frankfort, on said territory, which is set off, and all paupers who shall become chargeable on said territory, in consequence of having derived a residence in said town of Frankfort, shall have their settlement in and be supported by the said town of Monroe."

ON REPORT.

ASSUMPSIT, for supplies furnished by the plaintiffs to a pauper, who, at the time of the passage of c. 226 of the Special Laws of 1863, was residing on the territory set off from Frankfort to Monroe, and there supported as a pauper by the defendants. The only question was the construction of § 3, of said chapter 226.

The full Court were to render judgment upon nonsuit or default, as the rights of the parties required.

*N. H. Hubbard,* for the plaintiffs.

*Thos. W. Vose,* for the defendants.

APPLETON, C. J. — By an Act approved Feb. 21, 1863, c. 226, certain territory "and the inhabitants residing thereon," was set off from the town of Frankfort and annexed to the town of Monroe.

James Grant, for whose support this suit is brought, was a pauper living on the part annexed, when the Act referred to took effect, having previously acquired a settlement in the town of Frankfort by a residence on what now constitutes that town.

It is obvious that then there might be paupers supported by Frankfort, who had acquired a settlement by virtue of residence on the part set off to Monroe. So, hereafter, persons might become paupers, whose settlement was acquired by reason of such residence. It would seem equitable that the town of Monroe should, in the future, be responsible only for the support and maintenance of such paupers as had acquired a settlement by residence on the part annexed. So there might be paupers at the time of annexation or thereafter whose settlement originated in such residence.

By § 3, "all paupers now chargeable to the town of Frankfort, on said territory, which is set off, and all paupers who shall become chargeable on said territory in consequence of having derived a residence in said town of

Frankfort, shall have their settlement in and be supported by said town of Monroe." All other paupers, it would seem to follow, are to be supported by Frankfort.

This section refers to two classes of paupers :— those "now chargeable * * on said territory" and all persons "who shall become chargeable on said territory." The punctuation is entitled to very slight regard in the construction of a statute. Hence, by omitting the comma in the printed statute after the word Frankfort, the idea of the Legislature becomes more apparent. The phrases "now chargeable * * on said territory" and "shall become chargeable on said territory," have, in each instance, reference to the same kind of liability,— that is, one imposed on a territory by virtue of residence thereon. The section referred to treats the part annexed as a distinct town, imposing upon it the same liability as if it had been a town. Those chargeable on said territory are those who have acquired a settlement in Frankfort by a residence thereon. Why chargeable? "In consequence of having derived a residence in said town of Frankfort." In other words, in consequence of having resided in Frankfort so long as thereby to have acquired a settlement. Those "now chargeable * * on said territory," are those who have acquired a settlement thereon. Those "who shall become chargeable on said territory" are those who, having a settlement by residence, hereafter become paupers. That is, each part of the town is to take care of those, who become paupers by residence therein. Monroe bears the burden of those chargeable on the territory annexed by reason of antecedent residence thereon; Frankfort is left to support those chargeable on the remaining portion of its territory.

These views best correspond with the general pauper law and with the past legislation in the division of towns, and the construction given to such legislation. The annexation is of certain territory "and the inhabitants residing thereon."

In *Southbridge* v. *Charlton*, 15 Mass., 248, a new town

was created out of parts of existing towns. It was held that the new town was not chargeable with the support of paupers, who, at the time of incorporation, were supported by the old towns, upon the territory forming part of the new town, but whose settlement was derived from owning and occupying real estate in another part of the old town. "We think it very clear," observes PARKER, C. J., "that the Act of incorporation did not affect their settlement. They were paupers, not having removed within the limits of the newly incorporated town, by their own volition, but having been placed there by the overseers of Charlton, for the convenience of the town, their municipal relations remained unaffected by the removal. Nor were they inhabitants of that part of Charlton which became Southbridge, within the meaning of the fourth section of the Act of incorporation." In *New Braintree* v. *Boylston*, 24 Pick., 164, an Act incorporating part of a town into a separate town, provided that any person who might have gained an inhabitancy within the part thus incorporated, and who should thereafter need to be supported as a poor person, should be supported by the new town. It was held that a pauper, who had gained a settlement on that part of the territory which continued to be the old town, but had removed into the other part before it was incorporated as the new town, retained his settlement in the old town. In *Smithfield* v. *Belgrade*, 19 Maine, 387, it was decided that, when a part of one town has been annexed to another, a pauper residing on the part annexed with one who had contracted with the town to support him, but whose residence had, prior thereto, been on a part not annexed, is not thereby transferred to the town to which the annexation is made,—such residence being merely temporary, and not established in that part of the town in which it is. "We are of opinion," observes WESTON, C. J., "that a temporary residence, under these circumstances, did not establish his home in that part of the town," referring to the part annexed. The residence of a pauper "at the poor house, we think," observes MAY, J., in *Brewer*

v. *Eddington*, 42 Maine, 541, " cannot properly be regarded as possessing the characteristics of a statute home. * * He was subject to removal at any time, not at his own will, but at the option and discretion of others. The town or the overseers of the poor might remove him at pleasure. His supplies were all furnished by the town. We are of opinion that such a residence does not constitute a home within the meaning of the statute." If, then, James Grant was not to be deemed an inhabitant, dwelling and having his home in the part annexed, his settlement has not been changed by the Act of annexation, but remains in the town of Frankfort, where before it had been established by his residence therein.

That the construction given is in accordance with the intention of the Legislature, is fully established by the Act approved March 21, 1864, c. 385, § 2,* which is fully confirmatory of these views.          *Defendants defaulted.*

CUTTING, KENT, DICKERSON and BARROWS, JJ., concurred.

---

* Statute of 1864, c. 385, § 2.  "The third section of said Act, (statute of 1863, c. 226,) shall be so amended as to read, all persons now chargeable as paupers, and all who may become chargeable as paupers, whose legal settlement is upon said territory, shall have their settlement in and be supported by said town of Monroe."